The People, *ex rel.* Post, *vs.* Ransom, late sheriff of Tioga.

A sheriff cannot be compelled to convey real estate sold by him on execution to an assignee of the certificate of sale, until the assignment has been filed, according to the act of 1835. *Semble.* *Per* Bronson, C. J.

A junior judgment creditor, who pays to the purchaser of land sold on an older judgment the amount of his bid and takes an assignment of the sheriff's certificate, stands in the place of the purchaser; and the interest thus acquired may be purchased by another judgment creditor without paying any part of the judgment of the assignee of the certificate.

The clerk's certificate, authenticating a copy of the docket of a judgment required to be produced by a purchasing creditor, need not be under seal.

Nor need it state that the copy has been compared with the original, &c., as directed in respect to certain copies of papers by 2 *R. S.* 403, § 59.

Though the production of the proper papers required of a purchasing creditor may be waived by the purchaser or other person whose right is sought to be acquired, so far as respects himself, yet such waiver will not affect any other creditors seeking to purchase the same premises.

Therefore, if a judgment creditor seek to acquire the right of the purchaser of land sold on an execution, and pay the money required to the purchaser, without producing the proper papers, he waiving their production, the purchase *is* complete, if no other creditor desire to purchase; but any other judgment creditor may treat the proceeding as void, and may acquire the purchaser's right as though nothing had taken place.

The purchasing creditor must deliver the requisite papers to the same party to whom he pays the money; and he cannot make the payment to the purchaser and afterward deliver the proper papers to the sheriff. It is the official duty of the sheriff to preserve the papers left with him by a purchasing creditor, and to exhibit them, on request, to any third person having an interest in the matter.

Redemption of land sold on execution. On the return to an alternative mandamus, the case was substantially as follows: On the 30th November, 1841, the lands of Samuel Hart were sold by the defendant, then sheriff of Tioga, on a judgment of this court against Hart and others, in favor of John Hollenback, docketed in 1838. Hollenback became the purchaser for $416,45, and received the sheriff's certificate. The relator was the assignee of two judgments recovered in this court against Hart and others, in favor of James C. Biddle, one of which was docketed January 8, 1840, and the other January 10, 1840. On the 28th of February, 1843, the relator went

to Hollenback, the purchaser, to acquire his title; he paid the purchase money with interest, and took an assignment of the sheriff's certificate. He claims also as a purchasing creditor, and alleges in the mandamus that Hollenback waived the necessity for presenting the papers required by law to entitle him to purchase. On the same day the relator left with the sheriff a copy of the assignment of the certificate of sale, and a memorandum of the two judgments which he owned, giving the title of the causes, the amount recovered, and the time when, togethei with what purported to be a copy of an assignment of the judg ments to the relator. There was no proof of this assignment, nor any affidavit of the amount due, nor copy of the dockets of the judgments. No notice was given to the sheriff that the relator claimed as a purchasing creditor from Hollenback.

The bank of Ithaca recovered two judgments against Hart and others in this court, both of which were docketed on the 16th of November, 1840. On the 28th of February, 1843, but whether before or after the relator had been to Hollenback does not appear, the attorney of the bank went to the sheriff, presented certified copies of the dockets of the judgments, and an affidavit of the true sum due upon each of the judgments, and paid the purchase money with interest. This was done for the purpose of acquiring the title of the purchaser. On the first of March following, the sheriff executed a deed to the bank, and the bank has since sold and conveyed the land to *bona fide* purchasers. The writ calls on the sheriff to execute a deed to the relator, or show cause, &c. The relator demurred specially to the return, and the sheriff joined in demurrer.

*George Sidney Camp & M. T. Reynolds*, for the relator

*B. D. Noxon*, for the defendant.

*By the Court*, BRONSON, Ch. J. The court has not been disposed to favor special demurrers in cases of this kind; (*The People* v. *New York C. P.*, 9 *Wend.* 429,) and besides, the relator in thi ;ase, could gain nothing by having our decision

turn upon matters of form, for the papers are as defective on his side as they are on the other. I shall, therefore, confine myself to such questions as touch the merits of the controversy.

The relator claims in two ways; first, under the assignment of the sheriff's certificate of sale; and second, as a purchasing creditor under the Biddle judgments, which had been assigned to him.

Against the relator's claim as assignee of the sheriff's certificate, it is objected that he has not caused the assignment to be filed in the clerk's office of the county, pursuant to the act of 1835. (*Stat.* 1835, *p.* 210.) It is very questionable whether the sheriff can be compelled to convey before the assignment has been filed; though if he had chosen to do so, and the relator was the only creditor in the case, the want of filing would not have made the deed void. (*Bank of Vergennes* v. *Warren,* 7 *Hill,* 91. *And see The People* v. *Muzzy,* 1 *Denio,* 239.) But it is not necessary to consider the objection any further at this time; for if the assignment had been duly filed the relator could not succeed upon his first ground.

As assignee of the sheriff's certificate, the relator stood in the place of Hollenback, the original purchaser; and if the proceedings of the Bank of Ithaca under its judgments were regular, the bank has acquired all the rights of the original purchaser, and of every one else claiming by assignment from him. The only objection which has been suggested to the proceedings of the bank is, that the certified copies of the dockets of the bank judgments, which were presented to the sheriff, were not under the seal of the court; nor did the clerk certify that he had compared them with the originals, &c., as is directed by 2 *R. S.* 403, § 59. That question has already been considered and settled. When a copy of the docket is used for this purpose a seal is not necessary, nor need the clerk's certificate run into any detail by way of showing that a copy means a "compared" and "correct" copy; and that a copy means a copy, and not a mere extract or abridgment of the original. (*The People* v. *Ransom,* 2 *Hill,* 51.) A different rule would overturn many titles  The bank acquired the rights of the

original purchaser, and that is an end of the relator's claim under the assignment of the sheriff's certificate.

This brings us to the remaining ground on which the relator proceeds. As the Biddle judgments, which he owned, were older than those recovered by the bank, if his proceedings were regular and sufficient, then he, instead of the bank, acquired the rights of the original purchaser, and the sheriff should be required to give him a deed.

When the relator went to Hollenback with his money, he should have presented certified copies of the dockets of the judgments under which he claims; an assignment of the judgments to himself, verified by affidavit; and an affidavit of the true sum due on the judgments. (2 *R. S.* 373, § 60.) But he presented no papers whatever. The excuse alleged is, that Hollenback waived the necessity of producing them; and that makes the principal question in the cause. It is already settled that the original, or any subsequent purchaser, may, so far as he is himself concerned, waive the production of papers, or the performance of any other condition made for his benefit. (*Bank of Vergennes* v. *Warren,* 7 *Hill,* 91.) The immediate parties to the transaction may make what bargain they please. They may respectively insist on all that the law will give them; or they may accept of less. But whether they can omit any thing required by the statute, so as to affect other creditors coming to purchase, is a very different question. The statute provides, that every creditor intending to acquire the rights of the original purchaser, shall furnish evidence that there is a lien upon the property, by decree, judgment, or mortgage, and that he is the owner of the lien. In addition to this there must be an affidavit of " the true sum due" on the decree, judgment or mortgage. These provisions, especially the last one, were made for the benefit of any other creditor who might afterward desire to purchase, as well as for the benefit of the original purchaser. The true amount due is a matter of no importance to the original purchaser; for if any thing, whether more or less, is due, the right of the creditor to purchase is unquestionable. But the true sum due is a very important fact to the creditor

The People *v.* Ransom.

who desires to become the third purchaser, because it regulates the amount which he is required to pay. Hollenback might, for himself, dispense with the production of an affidavit or any other paper; and if no other creditor had desired to purchase, the relator would have acquired a good title. But when the bank went to purchase, it had no evidence that the relator owned the judgments under which he had acted, or that any particular sum of money was due upon them. The officers of the bank could not know whether the prior liens exceeded the value of the property, nor how much the bank must pay for the purpose of becoming a purchaser. If the officers of the bank knew any thing about the relator's proceedings, they had a right to disregard what he had done. And whether they knew any thing about it or not, the relator acquired no rights as against the bank.

It is said that this very imperfect statute gives third persons no interest in the papers which the purchasing creditor is required to furnish; that although the papers must be presented to, and left with the sheriff, or other person to whom the money is paid, (§ 60,) neither the sheriff, nor such other person is bound to keep the papers; or if he does keep them, he is not bound to exhibit them to any other creditor. It is true that the statute does not, in terms, impose any such obligation. But so far as the sheriff is concerned, there can be no doubt that it would be his official duty to preserve the papers, and exhibit them to any third person having an interest in the matter. And, although the original, or any subsequent purchaser with whom the papers may be left, may be under no legal obligation to keep them, or to exhibit them to a third person, yet it would be his duty as a good citizen and a lover of justice, to preserve the papers, and allow them to be used by any person having an interest in the matter. We see, therefore, that the statute, though very imperfect in its details, has some tendency to secure the rights of every creditor having a lien; and as the fault of the law is, that it has not sufficiently guarded the rights of third persons, we ought not to disregard any of its

provisions having a tendency, though but a slight one, to pre-serve those rights.

As the relator went to the original purchaser, and not to the sheriff, the fact that he afterwards left papers with the sheriff was of no consequence. They should have been left with Hol-lenback, to whom the money was paid ; and, besides, the papers left with the sheriff were not such as the statute re-quires.

We think the sheriff was right in conveying to the bank ; and that the relator is not entitled to a deed.

BEARDSLEY, J. being interested, gave no opinion.

Judgment for defendant. (a)

(a) See *The People* v. *Fleming*, (*ante, p.* 137.)